June 1, 1998
<u>FOR PUBLICATION</u>

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE


STATE OF TENNESSEE,          (
                             (
     Plaintiff-Appellee,     (
                             (  Williamson County
                             (
v.                           (  Hon. Donald Harris, Judge
                             (
                             (  S. Ct. No. 01S01-9704-CC-00089
                             (
JAMES J. BENSON,             (
                             (
     Defendant-Appellant.    (

<u>For Plaintiff-Appellee</u>:          <u>For Defendant-Appellant</u>:

John Knox Walkup                   William H. Farmer
Attorney General & Reporter        Stephen W. Grace
Nashville                          Waller Lansden Dortch & Davis
                                            Nashville
Michael E. Moore
Solicitor General
Nashville

Gordon W. Smith
Associate Solicitor General
Nashville

Amy L. Tarkington
Assistant Attorney General
Nashville

Joseph D. Baugh, Jr.
District Attorney General
Franklin

**O P I N I O N**


JUDGMENT OF TRIAL COURT AND
COURT OF CRIMINAL APPEALS REVERSED;
CASE REMANDED FOR NEW TRIAL.                      REID, Sp. J.

     This case presents for review the appeal by the

petitioner, James J. Benson, from the judgment of the Court of Criminal Appeals affirming the trial court's denial of his petition for post-conviction relief. The petitioner asserts that he was denied the right to a fair trial before an impartial judge because the judge who presided over his criminal trial solicitated a bribe from him. The judgment denying the petition is reversed, and the petitioner is granted a new trial.

## I

In 1987, the petitioner was convicted of two counts of aggravated kidnapping and one count each of armed robbery, conspiracy, and accessory before the fact to armed robbery. He received an effective sentence of 128 years. The convictions and sentences were affirmed on direct appeal and reaffirmed on petition to rehear. The application for permission to appeal was denied.

The convictions arose out of an October 22, 1985, incident in which two armed masked men entered the home of George Khoury, a Davidson County jeweler who resided in Williamson County. While one of the men held the Khoury family at gunpoint, the other drove Mr. Khoury to his jewelry store and took $350,000 worth of the jewelry from the store. Upon returning to the home, the two armed men bound the family with duct tape and took another $35,000 worth of jewelry from Mrs. Khoury, $40 from the home safe, and $70 from Mr. Khoury's billfold.

An informant told investigators the identity of three men who were involved in the crime.  On November 1, 1985, after seeing the petitioner loading something into an automobile at his home, Davidson County officers made a warrantless stop of the automobile. The officers seized a pair of sunglasses, a pistol, and four motel receipts.  A search warrant was obtained for the petitioner's residence.  The officers seized a gray sweatshirt and brown cotton work gloves which were later identified as being worn by one of the men involved in the robbery.

All three co-defendants were charged in both Davidson and Williamson counties.  All three were tried jointly before Judge Sterling Gray, Jr., who sat by interchange in Williamson County. On June 6, 1986, the petitioner's counsel filed motions to suppress the evidence seized during the search of the petitioner's automobile, person, and residence. Hearings on the petitioner's motions to suppress were held on July 11, July 31, and August 4, 1986.  On December 8, 1986, Judge Gray denied all of the motions. The case proceeded to trial in January 1987, and the jury convicted the petitioner of the aforementioned offenses.  The court ordered a combination of concurrent and consecutive sentencing for an effective sentence of 128 years.

On November 17, 1987, Judge Gray and his court officer, Irvin Oten, III, were indicted as a result of a two-year investigation by the Tennessee Bureau of Investigation concerning allegations of bribery and corruption. Gray resigned that same day.

On January 19, 1988, Gray killed his wife and then committed suicide. On March 7, 1988, Oten, in exchange for his cooperation with the State in prosecuting Judge Gray, was allowed to plead guilty to one count of aiding and abetting bribery of a judicial officer. He was given a three-year prison sentence, which was suspended, and placed on probation for three years.

In 1993, the petitioner filed this petition for post-conviction relief. At the evidentiary hearing, the petitioner testified that he was approached on August 4, 1986, during a recess in the hearing on the motions to suppress, by Oten in the restroom at the Williamson County Courthouse. According to the petitioner, Oten told him that he looked like he needed a little help. The petitioner told Oten that he guessed he did. Oten replied that "everything has a price." When the petitioner asked what kind of price, Oten responded, "$30,000 and $100,000 in jewelry." The petitioner was also told that he had plenty of time to think about it.

The petitioner's lead attorney, Robert Ritchie, noticed the petitioner talking to Oten and became extremely upset. Ritchie warned the petitioner to stay away from Oten. The petitioner stated that he did not tell his attorneys what Oten had said to him. Later in the day, Oten again followed the petitioner into the restroom and gave him the telephone number of a grocery store where Oten could be reached after hours. Ritchie saw the interaction between the petitioner and Oten and "blew his stack." Ritchie told

-4-

the petitioner that if he talked to Oten again, Ritchie would withdraw from the case.

The petitioner testified that approximately two weeks later, out of curiosity, he dialed the number Oten had given him but was told that Oten was not there. The petitioner did not leave a name or number. The petitioner then testified that while at the Dayton Golf and Country Club on November 19, 1986, he received a message that a Judge Gray had called him and left a number where Gray could be reached. The petitioner called the number from a restaurant in Chattanooga and Gray answered. The petitioner testified that he knew Gray's voice because his ex-wife had been a court reporter in Gray's courtroom and he previously had spoken to Gray on the telephone on several occasions. Gray asked the petitioner if he would "be able to handle the business informed by Oten." The petitioner told Gray that he did not have the money. Gray told him to think about it because the charges against him were serious and Gray had not yet ruled on the petitioner's motions to suppress. According to the petitioner, Gray told him that he had until the first of December to come up with the money.

The petitioner further testified that Gray called the petitioner's mother's home on the morning of December 19, 1986, eleven days after Gray had denied the motions to suppress, and asked that the petitioner call him. The petitioner called Gray from his aunt's home in Dayton. Telephone records substantiated the call. According to the petitioner, Gray told him that help

could still be had.  Gray stated that he would like to have some jewelry to give his wife for Christmas.  When the petitioner denied having any jewelry, Gray asked for half of the money received for the jewelry.  The petitioner told Gray that he had no money.

The petitioner never paid the bribe requested by Gray.  The trial began on January 12, 1987.  The petitioner did not tell his attorneys about the call from Gray because, according to his testimony, he was afraid they would not believe him and would withdraw from the case.  On November 7, 1987, after his appeal had been briefed and argued but not decided and ten days before Gray and Oten were indicted, the petitioner told his other attorney, Charles Fels, about the bribery attempt.  Fels told the petitioner that the attorneys would get back with him about what could be done with the information.  The petitioner was told by his attorneys that they expected the appeal to be successful but, if he needed to raise the issue, it would have to be in a post-conviction proceeding.

Several witnesses from the Dayton Golf and County Club corroborated the petitioner's testimony regarding the telephone call from Gray.  The petitioner's former attorneys also testified on his behalf.   Both attorneys had felt that the motions to suppress would be successful and were very surprised when they were eventually denied.  They also felt that the four-month delay in ruling on the motions was unusually long.  According to the attorneys, a motion in limine was denied after another unusual

delay.  The attorneys stated that, based upon their experience, the sentence of 128 years was unusually long.  They also stated that although most motions for a new trial are summarily denied from the bench, in the petitioner's case, the motion for a new trial was taken under advisement before it was denied.  Both attorneys testified about seeing the petitioner and Oten together during the suppression hearing.  Both were upset because they feared that someone was trying to "set up" the petitioner for additional charges.

Several members of the Davidson County District Attorney's Office testified about the investigation of Oten and Gray.  None of the attorneys was aware of a bribe solicitation in the petitioner's case.  Special Agent Richard Wright with the T.B.I. testified that Oten admitted involvement in only two cases of bribery, but he knew Oten had accepted money in another case.  Wright testified that to his knowledge there had never been any allegation of misconduct in the petitioner's case.

Oten was the first witness called by the State.  Oten admitted taking money from two defendants who had cases pending in Gray's court but adamantly denied ever speaking with the petitioner.  Ed Yarbrough, the attorney who had represented Oten in his plea negotiations, testified that the district attorney's office had promised Oten that he would not be incarcerated if he was truthful and assisted them in their investigation of Gray.  He advised Oten to cooperate and report any other cases in which a

bribe had been solicited.

The trial court denied the post-conviction petition, concluding that the petitioner had failed to prove that Gray had solicitated a bribe from him. The Court of Criminal Appeals reversed this finding but affirmed the denial of the petition on the ground that the petitioner had waived the solicitation issue by not raising it pretrial or in his motion for a new trial.

**II**

In order to obtain relief in a post-conviction proceeding, the petitioner must show that his "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the constitution of this state or the Constitution of the United States." Tenn. Code Ann. § 40-30-105 (1990 Repl.) (repealed 1995).[1] The right to a fair trial before an impartial judge is a fundamental constitutional right. See <u>Chapman v. State of California</u>, 386 U.S. 18, 23 n. 8, 87 S. Ct. 824, 828 n. 8, 17 L.Ed.2d 705, 710 n. 8 (1967) (citing <u>Tumey v. Ohio</u>, 273 U.S. 510, 47 S. Ct. 437, 71 L.Ed. 749 (1927)). Article VI, § 11 of the Tennessee Constitution provides that "[n]o Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested." The purpose of this

---

[1]This was the statute in effect when the petitioner filed his post-conviction petition. The Post-Conviction Procedure Act of 1995, T.C.A. §§ 40-30-201, <u>et seq.</u> (1996 Supp.), governs all petitions for post-conviction relief filed after May 10, 1995. 1995 Tenn. Pub. Acts, ch. 207, § 3.

constitutional provision is to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality or favor. Chumbley v. People's Bank & Trust Co., 165 Tenn. 655, 659, 57 S.W.2d 787, 788. (1933). The right to an impartial judge is also guaranteed by Article I, § 17 of the Tennessee Constitution, which provides that every citizen shall have his case tried "by due course of law." In re Cameron, 126 Tenn. 614, 659, 151 S.W. 64, 76 (1912).

In In re Cameron, the Court emphasized that impartiality of the judiciary is a fundamental principle:

> The fundamental principle is that parties litigant are entitled to an impartial judge. It is only when the people are satisfied that impartial judges decide their controversies that they entertain feelings of reverence for the judgments of the courts of the land. . . . But it is of immense importance, not only that justice shall be administered to men, but that they shall have no sound reason for supposing that it is not administered. It is of lasting importance that the body of the public should have confidence in the fairness and uprightness of the judges created to serve as dispensers of justice. The continuance of this belief, so long entertained by the people of this country, and so well warranted by the history of the judiciary as a body, is largely essential to the future existence of our institutions in their integrity. We say it is a fundamental principle that the judge shall be impartial.

126 Tenn. at 658-59, 151 S.W. at 76.

There is also a due process right under the federal

constitution to a fair trial before an impartial judge. However, as the United States Supreme Court recently noted, most questions of judicial disqualification are not constitutional:

> [M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 828 106 S. Ct. 1580, 1588-1589, 89 L.Ed.2d 823 (1986). Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. See, e.g., Aetna, supra, at 820-821, 106 S. Ct., at 1584-1585; Tumey v. Ohio, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L.Ed. 749 (1927); 28 U.S.C. §§ 144, 455; ABA Code of Judicial Conduct, Canon 3C(1)(a)(1980). But the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal," Withrow v. Larkin, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L.Ed.2d 712 (1975), before a judge with no actual bias against the defendant or interest in the outcome of his particular case. See, e.g., Aetna, supra, at 821-822, 106 S. Ct. at 1585-1586; Tumey, supra, at 523, 47 S. Ct., at 441.

Bracy v. Gramley,      U.S.    , 117 S. Ct. 1793, 1797 (1997).

The facts of Bracy are similar to the present case. The judge who presided over Bracy's murder trial had accepted bribes from other criminal defendants. Bracy claimed that the judge's taking of bribes from some criminal defendants not only rendered him biased against the State in those cases but also induced a compensatory bias against defendants, like Bracy, who did not bribe him. The Court held that, if it could be proved, such compensatory bias on the judge's part in Bracy's own case would violate the Due

Process Clause of the Fourteenth Amendment.  Id.

The Court finds that bribery solicitation, if proven, would constitute the denial of the petitioner's fundamental constitutional right to a fair trial before an impartial judge. If, as the petitioner contends, Gray solicitated but did not receive a bribe from the petitioner, then the likelihood of bias is even stronger than in Bracy where there was no affirmative solicitation.  Before determining whether the petitioner met his burden in demonstrating that Gray solicitated a bribe from him, the Court must address the threshold issue of whether the claim was waived for purposes of post-conviction relief.

**III**

Tenn. Code Ann. § 40-30-112(b)(1) (1990 Repl.) (repealed 1995) provides that "[a] ground for relief is 'waived' if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Furthermore, "[t]here is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived."  Tenn. Code Ann. 40-30-112(b)(2) (1990 Repl.) (repealed 1995).

In the present case, the Court of Criminal Appeals held that the petitioner had the opportunity both pretrial and in his

-11-

motion for a new trial to raise the solicitation issue and that his explanation -- that he feared his attorneys would withdraw from the case if he told them -- did not provide a legally sufficient reason to excuse his failure to raise the issue earlier.[2] The court therefore concluded that the petitioner had not overcome the presumption of waiver.

This Court finds that the issue was not waived for purposes of post-conviction relief. The petitioner could not be expected to ask the judge to recuse himself on the ground that he had solicitated a bribe from the petitioner. Judicial corruption is not a basis for disqualification about which the judge accused can make a determination. Cf. Tenn. S. Ct. R. 10, Canon 3E (setting forth circumstances under which a judge should disqualify himself because his impartiality might reasonably be questioned). The petitioner should not be penalized for not raising the issue until the investigation of Gray became public knowledge. Before that time, the petitioner understandably questioned whether even his attorneys would believe him. Furthermore, the issue could not be raised on direct appeal because it involved facts which were not in the record.[3] Under the facts and circumstances of this case, the post-conviction proceeding was the earliest opportunity at

---

[2]The State concedes that once the petitioner informed his attorneys, they correctly advised him that the matter could not be litigated on direct appeal. See Wilson v. State, 882 S.W.2d 361, 364 (Tenn. Crim. App. 1994) (holding that issues cannot be raised for the first time in appellate court).

[3]When a claim of judicial bias is premised upon the comments of the judge during the trial or some other conduct reflected in the record, the issue is subject to waiver if it is not raised on direct appeal, and the petitioner will be bound by his attorney's failure to pursue it. See House v. State, 911 S.W.2d 705, 711 (Tenn. 1995).

-12-

which the issue could be have been presented; therefore, it was not waived within the meaning of Tenn. Code Ann. § 40-30-112(b)(1).

IV

Having determined that the solicitation issue was not waived, the next issue is whether the petitioner proved the factual allegations in his petition by a preponderance of the evidence. Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995).[4]  The trial court's findings are conclusive on appeal unless the evidence preponderates against the judgment.  Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).  Reversing the trial court, the Court of Criminal Appeals concluded that the petitioner had carried his burden of proving that Gray solicitated a bribe from him.  The court stated:

> The state's only direct evidence that the
> petitioner was not solicited for a bribe was
> the testimony of Oten.  However, the record is
> replete with instances in which Oten had
> falsely represented facts to T.B.I. officers.
> Oten testified more than once that he had never
> spoken to the petitioner under any
> circumstance, however this testimony is in
> direct contradiction to that of the
> petitioner's attorneys and the attorneys'
> investigator in this case.  Oten also testified
> falsely concerning his prior record.

Furthermore, the testimony that Gray telephoned the Dayton Golf and

---

[4]Under the new post-conviction procedure act, petitioners have the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1996 Supp.).

Country Club asking for the petitioner and that the petitioner returned his call was unrebutted. Also unrebutted was the call that Gray placed to petitioner and which petitioner returned from his aunt's home in Dayton, which was substantiated by the telephone records. The State provided no explanation for the unusually long delay in ruling on the petitioner's pretrial motions. This Court agrees with the Court of Criminal Appeals that the weight of evidence preponderates against the trial court's finding that the petitioner did not carry his burden in proving that he had been solicitated for a bribe.

V

The final issue is whether the denial of the right to a fair trial before an impartial judge is subject to harmless error analysis. In State v. Bobo, 814 S.W.2d 353, 357 (Tenn. 1991) (citing other cases), the Court noted that the right to an impartial judge is one of the rights that are so basic to a fair trial that their infraction has never been treated as harmless. In Vasquez v. Hillery, 474 U.S. 254, 263, 106 S. Ct. 617, 623, 88 L.Ed.2d 598, 609 (1986), the United States Supreme Court stated:

> When constitutional error calls into question
> the objectivity of those charged with bringing
> a defendant to judgment, a reviewing court can
> neither indulge a presumption of regularity nor
> evaluate the resulting harm. Accordingly, when
> the trial judge is discovered to have had some
> basis for rendering a biased judgment, his
> actual motivations are hidden from review, and
> we must presume that the process was impaired.

-14-

A trial is either fair or not.  Evidence of judicial corruption requires reversal regardless of the other facts of the particular case.  The denial of the petitioner's right to an impartial judge is a constitutional error which affects the integrity of the judicial process.  A new trial is the only remedy. See <u>Bobo</u>, 814 S.W.2d at 358.

**VI**

In conclusion, the Court holds that the petitioner had a fundamental constitutional right to an impartial judge, that his failure to raise the issue earlier did not constitute waiver for purposes of post-conviction relief, that he proved by a preponderance of the evidence that the judge who presided over his criminal trial solicitated a bribe from him, and that the denial of his right to an impartial judge defies analysis by harmless error standards and requires automatic reversal.  Therefore, the judgments of the trial court and Court of Criminal Appeals denying post-conviction relief are reversed, and the case is remanded for a new trial.

Costs are taxed against the State.

_____
Lyle Reid, Special Justice

Concur:

Anderson, C.J., Drowota, Birch,
   and Holder, JJ.