# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2004

## JERRY D. CARNEY V. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 97-D-2821    Cheryl Blackburn, Judge

_____

### No. M2002-02416-CCA-R3-PC - Filed February 14, 2005

_____

On November 19, 1998, the petitioner was convicted by a jury of first degree murder.  He was sentenced to life in prison with the possibility of parole.  The petitioner appealed to this Court, and we affirmed the judgment of the trial court.  State v. Jerry D. Carney, M1999-01139-CCA-R3-CD, 2000 WL 1335770, at *1-2 (Tenn. Crim. App. at Nashville, Sept. 15, 2000) perm. to appeal denied (Tenn. 2001).  The petitioner then filed a petition for post-conviction relief.  The post-conviction court denied this petition.  The petitioner appeals the post-conviction court's decision.  We affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Cynthia F. Burnes, Nashville, Tennessee, for the appellant, Jerry D. Carney.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Roger D. Moore, Assistant District Attorney General,  for the appellee, State of Tennessee.

## OPINION

_____ Factual Background

In the opinion stemming from the direct appeal, our Court stated the following facts:

On the night of August 13, 1997, the appellant, Jerry Carney, was "riding around" Nashville and drinking beer with his friends Eric Bradshaw, Mike Shane,

Jimmy Womack, and Melia Gribble. Erin Harris, another friend, paged the appellant and requested that he pick her up at 716 Virginia Avenue. On the way to Virginia Avenue, Bradshaw remarked that he believed that someone who had a problem with his brother, someone named "Shane" or "Shawn," lived at that address.

Upon arriving at the residence, the four males exited the car and began urinating in the front yard. Bill Massey and Craig Cartwright walked out of the residence to investigate. The appellant began asking several people, "Who is Shane?" Cartwright responded that he was Shane. Upon hearing Cartwright identify himself as Shane, the appellant quickly walked back to the vehicle and sat in the back seat behind the driver.

Massey approached the car on the driver's side and noticed a gun on the seat near the appellant. Massey asked if the appellant had a problem. The appellant replied that there was no problem. Massey then requested one of the beers that was located in the back seat. The appellant handed Massey a beer. As soon as Massey touched the beer, the appellant grasped the gun with both hands. Massey threw down the beer and grabbed the appellant, hoping to disarm him. Cartwright had moved to the passenger side of the car. Although Massey was in direct contact with the appellant, the appellant never looked at Massey. Instead, the appellant pulled the slide of the gun back twice and fired six shots into Cartwright who was standing near the open passenger door.

The appellant, Bradshaw, Shane, Womack, Gribble, and Harris sped away in the car to Bradshaw's house. The appellant took a shirt and wiped the car, inside and out, in order to destroy evidence. He also removed a decal from the back glass of the car and tried to remove all of the spent shell casings from the car. The appellant entered Bradshaw's house, removed his bloody clothes, and soaked them in water in the bathtub. He then went to sleep and slept until the next day when he was picked up by the police for questioning.

The appellant testified that he shot Cartwright in self-defense. The appellant stated that he was afraid of Massey and Cartwright because they were much larger than he. The appellant claimed that Massey had grabbed the appellant by the shirt collar prior to the appellant's retreat to the car. The appellant alleged that he feared Massey or Cartwright would hurt him or try to take his gun and use it against him.

A jury convicted the appellant of first degree murder on November 19, 1998. The trial court sentenced the appellant to a term of life in prison, with the possibility of parole.

State v. Jerry D. Carney, M1999-01139-CCA-R3-CD, 2000 WL 1335770, at *1-2 (Tenn. Crim. App. at Nashville, Sept. 15, 2000) perm. to appeal denied (Tenn. 2001). Following his conviction, the petitioner appealed to our Court. Id. We affirmed the petitioner's conviction. Id.

The petitioner filed his pro se Petition for Post-conviction Relief August 21, 2001. An Amended Petition for Post-conviction Relief was filed by counsel on December 19,2001. On July 15, 2002, the trial court denied the petitioner's Petition for Post-conviction Relief. The petitioner now appeals this decision.

## STANDARD OF REVIEW

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## CALLING OF JURORS

The petitioner first argues that the trial court erred in not allowing the petitioner to call two jurors as witnesses at the hearing on his Petition for Post-conviction Relief. According to the petitioner there were two jurors on his jury who were married, Mr. and Mrs. Stoltz. Mr. Stoltz was actually on the jury of twelve (12) that deliberated and Mrs. Stoltz sat as an alternate. In his brief, the petitioner argues that on the evening after the jury charge and before the jury deliberation, the Stoltzes could have discussed the case, which would have been communication with a non-juror.

The trial court made the following findings with regard to this issue:

The Court denied the Petitioner's request to call Mr. and Mrs. Stoltz, citing Rule 606(b) of the Tennessee Rules of Evidence, and found that this issue is not properly before the Court on a Petition for Post-Conviction Relief. This Court notes that Mrs. Stoltz was an alternate juror, who did not participate in jury deliberations. Furthermore, this issue was waived, as it was not presented on appeal.

As stated by the trial court, this issue was not presented in the petitioner's direct appeal from his conviction. In a post-conviction proceeding, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a

court of competent jurisdiction in which the ground could have been presented unless" the claim is based upon a newly-recognized constitutional right with retroactive application or the ground was not presented as the result of state action in violation of the federal or state constitution. Tenn. Code Ann. § 40-30-106(g); see State v. Benson, 973 S.W.2d 202, 208 (Tenn. Crim. App. 1998).

At the post-conviction hearing, trial counsel testified that he had no independent recollection that there was a husband and wife on the jury. He did state that it was included on a list of what he was going to assign as error. There was no testimony as to why he did not bring the issue on appeal. The issue is definitely not a newly-recognized constitutional right with retroactive application and there was no evidence presented that the ground was not presented as a result of state action. Therefore, this issue is waived.

## APPOINTED COUNSEL

The petitioner also argues that the trial court erred in not holding a hearing to rule on motions to remove the petitioner's post-conviction counsel. In support of his argument that the post-conviction court should have held a hearing, the petitioner argues that his post-conviction counsel was not prepared for his post-conviction hearing. The standard of review for this particular issue is whether the trial court abused its discretion. See Leslie v. State, 36 S.W.3d 34, 37 (Tenn. 2000).

On January 7, 2002, the petitioner's post-conviction counsel filed a motion to be relieved as counsel of record. On January 16, 2002, the petitioner acting pro se also filed a motion requesting the removal of his post-conviction counsel. This motion stated:

> WHEREFORE PREMISES CONSIDERED Movant prays that [sic] this Honorable Court's relief in the following,
> 1. That Petitioner be brought in person to Court, so that Petitioner can explain to this Honorablr [sic] Court why Petitioner is respectfully requesting appointment of New Counsel.
> 2. That Petitioner be allowed to explain and show to this Honorable Court the lack of communication, cooperation and the disrespectful, unethical and threatening comments made towards the Petitioner by [post-conviction counsel], his current counsel.
> 3. A brief hearing regarding the merits of this Motion.
> 4. Relief as deemed appropriate by this Honorable Court.

The trial court held the post-conviction hearing on May 29-30, 2002. At the hearing, the petitioner's post-conviction counsel brought up the motions to be relieved as counsel, and the trial court stated that the post-conviction counsel would not be relieved. In an order filed July 15, 2002, the trial court granted the motions and relieved the petitioner's post-conviction counsel as counsel of record and appointed new counsel for the appeal.

In his amended brief, the petitioner supports his argument by listing the ways in which his post-conviction counsel was not prepared for the post-conviction hearing. The State then argues in its brief that the petitioner is not entitled to effective assistance of counsel for post-conviction proceedings. In his reply brief, the petitioner then argues that "by an unwanted and unprepared post-conviction counsel being forced on the appellant during the post-conviction proceeding, he was denied a full, fair and meaningful hearing." The petitioner points to his testimony during the post-conviction hearing during which he stated:

> Truthfully, I have had no cooperation on [post-conviction counsel's] part. He filed a motion to be relieved as counsel and appoint me a new counsel January 7. I filed one January 15 requesting the same action. We are not compatible. I've had no cooperation with him. We have had several arguments through letters. I've done written the Board of Professional Responsibility on him, so truthfully, I don't even feel that I'm having a fair hearing today. Ain't no one prepared. These are serious Constitutional violations that has an innocent man sitting there the rest of his natural life in prison for a crime he is not guilty of by law and evidence . . . .

The State is correct in its assertion that there is no constitutional right to representation by counsel in post-conviction proceedings and therefore, no right to effective assistance of counsel in post-conviction proceedings. House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). However, there is a statutory right to counsel. See Tenn. Code Ann. § 40-30-207(b)(1). "The appointment of counsel assists in ensuring that a petitioner asserts all available grounds for relief and fully and fairly litigates these grounds in a single post-conviction proceeding." Leslie v. State, 36 S.W.3d 34, 36 (Tenn. 2000). In Stokes v. State, 146 S.W.3d 56 (Tenn. 2004), our supreme court quoted House v. State, 911 S.W.2d 705 (Tenn. 1995) in its analysis and stated, "All that due process requires in the post-conviction setting is that the defendant had "'the *opportunity* to be heard at a meaningful time and in a meaningful manner.'" House, 911 S.W.2d at 711 (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed. 18 (1976))." Stokes, 146 S.W.3d at 61 (emphasis in original)

In Leslie, our supreme court stated the obligations of post-conviction counsel:

> We have summarized the obligations and responsibilities of a post-conviction attorney as follows:

> > Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

> Tenn. Sup. Ct. R. 28, § 6(C)(2). Counsel is also to file a certification indicating that he or she has thoroughly investigated the possible constitutional

violations with the petitioner, and has raised all non-frivilous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Tenn. Sup. Ct. R. 28, § 6(C)(3), app. C.

36 S.W.3d at 38.

We have reviewed the record with regard to the petitioner's post-conviction counsel's performance. Post-conviction counsel filed an amended petition and presented all reasonable claims in that petition. Also, petitioner's post-conviction counsel filed the certification required by Tennessee Supreme Court Rule 28, section 6(c)(3), app. C stating that he discussed possible constitutional arguments with the petitioner and raised all non-frivilous grounds. At the beginning of the hearing, the petitioner's post-conviction counsel asked the trial court about subpoenas for the two jurors in question and adequately examined the petitioner and cross-examined trial counsel. This is support for adequate investigation and interviewing of witnesses. Therefore, the petitioner's post-conviction counsel met the guidelines set out by the Tennessee Supreme Court.

In addition, we find that the petitioner's grounds for post-conviction relief were fully and fairly heard by the trial court. The petitioner was given wide latitude in his testimony and was allowed to make statements of his own accord in addition to answering questions on both direct and cross-examination. The petitioner was definitely given the opportunity to be heard at a meaningful time in a meaningful manner.

In Stokes, our Supreme Court concluded that there was no due process violation because there is no right to effective assistance of counsel for post-conviction proceedings and "the petitioner was afforded a full evidentiary hearing and full review in his first-tier post-conviction appeal." 146 S.W.3d at 61. The same is true in this case. The petitioner was also afforded a full evidentiary hearing and this case is his first-tier post-conviction appeal.

For the reasons stated above, we conclude that the trial court did not abuse its discretion in denying the petitioner an evidentiary hearing to determine whether his post-conviction counsel should have been relieved. Therefore, this issue is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner also argues that he was denied the effective assistance of counsel in several areas: (1) failure to prepare for trial; (2) failure to advise him of the correct elements of first degree murder; (3) failure to interview certain witnesses before trial; (4) failure to object to testimony concerning the autopsy report; (5) failure to object to expert testimony and the jury instruction concerning expert testimony; (6) failure to request a continuance after receiving the taped statements of witnesses on the evening of the first day of trial; and (7) failure to successfully impeach a witness' testimony in order to admit her taped statement.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins, 911 S.W.2d at 347. This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Failure to Prepare for Trial

The petitioner argues that he received ineffective assistance of counsel because his trial counsel was substituted on October 28 only days before the trial on November 16, 1998. He argues that his trial counsel did not have sufficient time to prepare for trial due to the timing of his substitution. However, the petitioner's trial counsel testified at the post-conviction hearing that he began work on the petitioner's case in the summer before the trial in October. He also testified that the petitioner's previous trial counsel had filed various motions and obtained discovery. The petitioner's trial counsel had obtained the file from the previous counsel. The petitioner's trial counsel also testified that he met with the petitioner before trial and they discussed the petitioner's version of the events. In the Order denying post-conviction relief, the post-conviction court stated, "This Court finds the testimony of [trial counsel] on the issue of adequacy of trial preparation to be credible."

We do not find that the evidence presented at the post-conviction hearing preponderates against the findings of the post-conviction court. The petitioner has not proven that this scenario created a situation in which trial counsel's advice was below the range of a competent attorney. A petitioner must establish both that his attorney was ineffective and that this incompetence prejudiced him to the extent that it affected the outcome of the trial. The petitioner has failed to prove either prong of the two prong analysis with regard to this issue. Therefore, this issue is without merit.

## Elements of First Degree Murder

The petitioner also argues that his trial counsel was ineffective because he advised him that "deliberation" was an element of first degree murder. In its order denying the petitioner's petition for post-conviction relief, the post-conviction court stated that it found the trial counsel's testimony that he advised the petitioner of the elements of the charge in the indictment credible. We do not find that the evidence presented at the post-conviction hearing preponderates against the findings of the post-conviction court. In addition, the petitioner has failed to demonstrate how he was prejudiced by the trial counsel's alleged mistake. Because we conclude that the outcome of the trial would not have been different had the petitioner's trial counsel not advised the petitioner that "deliberation" was an element of first degree murder, we find that this issue is without merit.

## Failure to Interview Witnesses

The petitioner argues that counsel was ineffective for failing to interview witnesses before trial. However, the petitioner does not state who the witnesses are that his trial counsel failed to interview. In its order, the post-conviction court stated:

> The evidence against the Petitioner was not even remotely circumstantial. All of the evidence linked the Petitioner to the crime. At the evidentiary hearing on the post-conviction petition, the Petitioner's trial counsel [ ] testified that he interviewed all of the potential witnesses provided to him by the Petitioner except one (1) individual, whom he could not locate. [Trial Counsel] testified that, in his judgment, the witnesses were either irrelevant to the case, would be uncooperative, or would not assist the case in any appreciable way.

> This Court finds that, given that nature of the evidence against the Petitioner, reasonable doubt would not have existed in the jurors' minds as to the Petitioner's guilt. Had the jury been presented with the Petitioner's those [sic] potential witnesses whom the Petitioner believes would have been relevant and exculpatory, there is not a reasonable probability that the result may have been different. Trial counsel's performance, therefore, was not deficient and did not prejudice the outcome of the case.

We agree with post-conviction court. We do not conclude that the petitioner's trial counsel has acted below the range of competence. The petitioner's trial counsel gave very valid answers to

explain his reluctance to use the witnesses in question. We believe that this would be considered a reasonably-based trial strategy, and we are not at liberty to second guess a reasonably-based trial strategy. See Adkins, 911 S.W.2d at 347. Therefore, this issue is without merit.

## Failure to Object to Testimony Concerning the Autopsy Report

The petitioner argues on appeal that his trial counsel was ineffective because he did not object to testimony concerning the autopsy report at trial. The autopsy report had serious errors. The race of the victim was incorrect, as was his height and dental work. Also, the toxicology report accompanying the autopsy report states that the sample was taken the day before the incident occurred. However, we have been unable to find this issue raised in the original petition for post-conviction relief, or in subsequent amended petitions for post-conviction relief. The issue raised in the post-conviction court concerning the erroneous autopsy report was that false and unreliable scientific evidence was used to convict the petitioner, rather than the ineffectiveness of counsel in not objecting to the report.

A party may not take one position regarding a ground in the trial court and change its strategy or theory midstream and advocate a different ground or reason in this Court. See State v. Aucoin, 756 s.W.2d 705, 715 (Tenn. Crim. App. 1988); State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988). The issue addressed by the post-conviction court was whether false and unreliable scientific evidence was used to convict the petitioner. This is the issue we now address. The post-conviction court's order stated as follows:

> This Court finds that, while the autopsy report presented at trial was clearly of the wrong victim, the weight and consideration attributed to the autopsy report and the credibility of the information contained therein, along with the credibility of the expert testimony regarding the report, are within the province of the jury. Although the autopsy report was entered into evidence as an exhibit at trial, the jury did not see the report itself – the autopsy report was not handed to the jury at any time. This Court will not endeavor to invade the province of the jury on this matter in order to determine to what extent, if any, the jury relied on the erroneous autopsy report. Furthermore, this Court finds that, given the nature of the evidence against the Petitioner, reasonable doubt would not have existed in the jurors' minds as to the Petitioner's guilt. Had the jury been presented with a flawless autopsy report, there is not a reasonable probability that the result may have been different. The introduction of the autopsy report at the trial in the above-entitled cause, therefore, did not prejudice the outcome of the case. Finally, this Court notes that defense counsel was aware of the erroneous report and defense counsel chose not to make an issue of the report, because the fact that the Petitioner shot the victim was not an issue, since the Petitioner's defense was self-defense. Furthermore, the Petitioner testified that he shot the victim.

Accordingly, and for reasons previously stated, this Court finds the Petitioner's claim to be without merit. This Court finds that this claim is hereby DISMISSED.

As stated above, the post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See Burns, 6 S.W.3d at 461. During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley, 960 S.W.2d at 578; Alley, 958 S.W.2d at 147. We find that the evidence does not preponderate against the trial court's findings. As the post-conviction court stated, the petitioner asserted self-defense as a defense and whether he shot the victim or not was not at issue in the trial. In addition, the autopsy report was never shown to the jury and trial counsel had the opportunity to cross-examine the witness regarding the autopsy report. For these reasons, we conclude that the evidence does not preponderate against the post-conviction court's conclusions. Therefore, this issue is without merit.

## Failure to Object to Expert Testimony and the Jury Instruction Regarding the Testimony

The petitioner also argues that his trial counsel was ineffective in not objecting to expert testimony by Dr. Emily Ward. The petitioner argues that she was not qualified as an expert concerning a statement that there was an absence of fouling and stippling and that with a nine (9) millimeter gun, an individual would have to be eighteen (18) inches or closer in order for stippling to be visible on the skin.

The petitioner also argues that the trial court's instruction regarding expert testimony in reference to Dr. Emily Ward was inconsistent with the rules of evidence and the petitioner's trial counsel did not object to the instruction.

In his amended post-conviction petition, the petitioner argues that the trial court abused its discretion by " untruthful and untrustworthy testimony" by the expert witness and by "giving the wrong and incomplete instruction" with regard to the expert witness. The petitioner argues that the trial court's actions were "plain error" with regard to both of these issues. On appeal the petitioner argues that trial counsel provided ineffective assistance of counsel by not objecting to both the testimony and the jury instruction.

A party may not take one position regarding a ground in the trial court and change its strategy or theory midstream and advocate a different ground or reason in this Court. See Aucoin, 756 S.W.2d at 715; Dobbins, 754 S.W.2d at 641. It is clear that the petitioner is trying to change his strategy on appeal. The post-conviction court did not address the issue presented in the petition or this new strategy presented on appeal. We assume the post-conviction court did not address this issue because it is not appropriate for post-conviction review. Post-conviction relief is only available for convictions and sentences that are void or voidable because of an abridgment of a petitioner's

constitutional rights. Tenn. Code Ann. § 40-30-103. This issue does not rise to a constitutional violation. Therefore, this issue is without merit.

<u>Failure to Request a Continuance and Failure to Impeach Melia Gribble's Testimony</u>

We will address the petitioner's last two arguments together because they are related. The petitioner next argues that his trial counsel was ineffective because he did not ask for a continuance in order to listen to taped statements of a few witnesses which he received the first evening of trial. The petitioner also argues that his trial counsel was ineffective in his attempted impeachment of Melia Gribble. At trial the petitioner's trial counsel failed to lay the proper foundation to admit Miss Gribble's taped statement into evidence which he contends would have enabled his trial counsel to impeach Miss Gribble.

The post-conviction court points out in its order that this Court has already addressed an issue dealing with the tapes in question. In the petitioner's direct appeal he argued that the delay in turning over the tapes violated his right to due process under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). While this is not exactly the same issue as that presented here, our Court's analysis of this issue in light of <u>Brady</u> is very helpful. When a <u>Brady</u> violation has been alleged, but the disclosure of the evidence is delayed rather than being a complete failure to disclose, <u>Brady</u> does not apply to the situation unless the delay has caused prejudice. <u>Jerry D. Carney</u>, 2000 WL 1335770 at *8-9. Our Court then analyzed whether the petitioner had been prejudiced by the delay in the disclosure of the tapes. At the conclusion of the analysis, our Court stated, "there was no exculpatory material contained in the tapes." Therefore, this Court has already concluded that there is no exculpatory material contained in the tapes.

When a petitioner seeks post-conviction relief he must prove both that the services rendered by his trial counsel were deficient and that this deficient performance was prejudicial. <u>See</u> <u>Powers v. State</u>, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). With regard to this issue, the petitioner cannot prove that he was prejudiced by his trial counsel's failure to request a continuance or lay the proper foundation to impeach Miss Gribble. This Court has already decided that there is no exculpatory information in the tapes and, therefore, we cannot conclude that the outcome of the petitioner's trial would have been any different had trial counsel been granted a continuance or been able to impeach Miss Gribble. Therefore, this issue is without merit.

## **CONCLUSION**

For the reasons stated above, we find that the petitioner's issues on appeal are meritless. We affirm the decision of the trial court.

_____
JERRY L. SMITH, JUDGE

-11-