FILED

03/27/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**JAMES HAWKINS v. STATE OF TENNESSEE**

**Criminal Court for Shelby County**
**No. 08-06057**

_____

**No. W2025-01934-CCA-T10B-CO**

_____

**ORDER**

This matter is before the Court upon the Appellant's petition for an accelerated interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B, § 2. The Appellant asks this Court to review the post-conviction court's November 14, 2025 order denying his motion to recuse Judge Chris Craft from his capital post-conviction proceeding. The State has filed a response in opposition to the petition. Having reviewed the petition, the supporting documents, and the State's response, this Court has determined that additional briefing and oral argument are unnecessary. *See* Tenn. Sup. Ct. R. 10B, § 2.05, 2.06. For the reasons set forth below, the post-conviction court's order is hereby AFFIRMED.

Background

In 2011, the Petitioner was convicted of premeditated first degree murder, initiating a false report, and abuse of a corpse for the February 2008 death of Charlene Gaither, his girlfriend and the mother of his three children. *State v. Hawkins*, 519 S.W.3d 1, 16 (Tenn. 2017). The police initially became involved when the Petitioner filed a missing person's report, claiming that Ms. Gaither had left their apartment after an argument and had not returned for several days. *Id*. at 19. Ms. Gaither's dismembered body was later found under a bridge in Mississippi. *Id*. at 20-21. During the investigation, the Petitioner made a statement to police claiming that his twelve-year-old daughter, K.T., had stabbed her mother in the neck and that the Petitioner had dismembered and disposed of the body in order to protect her. *Id*. at 25. However, K.T. testified at trial that the Petitioner, who had been sexually abusing her for months, killed her mother and then threatened to kill K.T. if she did not help him dispose of the body. *Id*. at 27-28. The Petitioner was sentenced to death and a consecutive sentence of eighteen years. *Id*. at 32. This Court affirmed the Petitioner's convictions and sentences, along with the trial court's denial of a petition for writ of error coram nobis. *See State v. Hawkins*, No. W2012-00412-CCA-R3-

1

DD, 2015 WL 5169157 (Tenn. Crim. App. Aug. 28, 2015). The Tennessee Supreme Court likewise affirmed the Petitioner's convictions and sentences, and the United States Supreme Court denied certiorari review. *Hawkins*, 519 S.W.3d at 54; *Hawkins v. Tennessee*, 583 U.S. 949 (2017).

The Petitioner subsequently filed a timely petition for post-conviction relief. As relevant here, one of the grounds for relief alleged by the Petitioner was that the State failed to disclose the relationship between Assistant District Attorney Danielle McCollum[1] and K.T., which created a conflict of interests and violated the Petitioner's right to due process. According to evidence developed during these post-conviction proceedings, Ms. McCollum initially became involved in the Petitioner's case as a law student interning with the Shelby County District Attorney's Office in early 2011 and remained involved through his trial and coram nobis proceedings after her graduation and licensure as an attorney. Ms. McCollum accompanied other prosecutors in meetings with K.T. and her brothers in preparation for trial. Ms. McCollum then became close with the family when she sat with them throughout the Petitioner's trial. Afterward, Ms. McCollum remained involved in K.T.'s and her brothers' lives, taking them on outings, providing them with furniture, clothes, and cellphones, and being a mentor to K.T. When K.T. was 18 years old, she left the residence of her maternal aunt and uncle and began living with Ms. McCollum. In 2020, Ms. McCollum and her husband formally adopted K.T. and had a new birth certificate issued with their names listed as her parents; K.T. was 25 years old at the time.

In the meantime, in May 2019, the Petitioner filed a motion to disqualify the Shelby County District Attorney's Office from his post-conviction proceedings due to this relationship. The Shelby County District Attorney's Office agreed to the recusal and sought the appointment of an attorney *pro tempore*. Eventually, attorneys from the 25th and 26th Judicial Districts were appointed to handle the case. When each of those District Attorney's Offices hired former members of the Shelby County District Attorney's Office, the Petitioner moved to disqualify them as well. The post-conviction court conducted hearings on that motion in October and November 2022, during which the above evidence regarding Ms. McCollum's relationship with K.T. was developed. It appears that those attorneys *pro tempore* recused themselves prior to the post-conviction judge ruling upon the Petitioner's motion.

Later, the Attorney General's Office filed a notice of appearance pursuant to 2023 Tenn. Pub. Acts ch. 182, and the Petitioner filed a motion to disqualify that office on the basis that the Act was unconstitutional. *See Hawkins v. State*, No. W2025-02015-CCA-R10-PD (Tenn. Crim. App. Feb. 23, 2026). During a hearing on that motion in September

---

[1] Ms. McCollum married several years after the Petitioner's trial. Because she is referred to by her maiden name throughout the record provided to this Court, this Court will use that name for consistency. No disrespect is intended.

2025, counsel for the Petitioner brought up Ms. McCollum in a hypothetical. Counsel suggested that if the Attorney General's Office were to hire Ms. McCollum and she were assigned to the Petitioner's case, the post-conviction court would lack authority under the Act to disqualify her or appoint an attorney *pro tempore*. The post-conviction judge responded as follows: "I remember, because the daughter was adopted because she had no one. She really—I mean, we all appreciated Ms. McCollum for doing that because this child was just—had a helpless life . . . ." On October 14, 2025, the Petitioner filed a motion to recuse the post-conviction court judge, arguing that these statements by the judge regarding Ms. McCollum's adoption of K.T. indicated that he had prejudged the Petitioner's conflict-of-interests claim and created an appearance of partiality in favor of the State.[2]

The post-conviction judge entered an order denying the recusal motion on November 14, 2025. The judge summarized the facts of the case and recalled his "concern about what might happen to K.T. in the future" after she experienced these "traumatic circumstances." The judge noted that unlike his ability to order defendants into rehabilitative programs, in his position he is unable to ensure that child victims and witnesses receive the help and support necessary to recover from the trauma of violent crimes and the trial process. As an example, the judge referred to a recent trial over which he presided in an unrelated case with a very young child victim and his hope that she would receive such help from her mother. The judge stated that he "was particularly concerned about K.T.'s welfare in the [P]etitioner's case after her trial because as far as this court knew, she had no one to help her adjust because her mother had been killed and her father would be in the Department of Correction."

The judge stated that he knew of Ms. McCollum through her court appearances and recalled that he had been told "[y]ears after the trial" that she and her husband had adopted K.T. Although the judge could not recall who was present during the conversation, he stated that they "all agreed to what a blessing this was, for K.T. to have a couple who obviously cared about her so much that they adopted her, so that she had a loving family to replace the mother and father she had lost under extremely traumatic circumstances." The judge stated that when Petitioner's counsel mentioned Ms. McCollum's name during the hearing, "the memory of the conversation . . . came flooding back into this court's mind," prompting him to make the statement that he did. However, the judge asserted that he had made "no legal judgment about whether or not Ms. McCollum's relationship with K.T. did or did not create a legal conflict of interest." The judge asserted that "[t]he conversation this court was witness to has no impact on this court's ability to be fair to the [P]etitioner or to rule impartially on the grounds in his petition." The judge found that his

_____

[2] In a footnote in his recusal motion, the Petitioner also suggests that the judge could be called as a "witness to the conflict" during the post-conviction hearing as an independent basis for recusal. However, he did not raise that ground on appeal.

3

"expression that the adoption may have helped K.T. recover from the trauma she experienced" did not "create[] an objective public appearance of partiality in favor of the State."

<u>Analysis</u>

Litigants in Tennessee have a fundamental constitutional right to a "fair trial before an impartial tribunal." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002); *see* TENN. CONST. Art. IV, § 11. The purpose of this provision is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality or favor." *State v. Benson*, 973 S.W.2d 202, 205 (Tenn. 1998). To that end, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11(A) provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." To determine whether a judge should be recused, courts apply an objective test because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). Thus, "recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Cook v. State*, 606 S.W.3d 247, 255 (Tenn. 2020) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001)). This Court reviews the trial court's ruling on a motion for recusal under a de novo standard of review. Tenn. Sup. Ct. R. 10B, § 2.01.

Under the Code of Judicial Conduct, impartiality means the "absence of bias or prejudice in favor of, or against, particular parties . . . as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, Terminology. Under Rule 2.11(A)(1), a judge should be recused when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer[.]" "The words 'bias' and 'prejudice' are central to the determination of whether a recusal should be granted." *State v. Rimmer*, 250 S.W.3d 12, 38 (Tenn. 2008) (app'x). "Generally, the terms refer to a state of mind or attitude that works to predispose a judge for or against a party." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). However, "[n]ot every bias, partiality, or prejudice merits recusal." *Id.* To warrant disqualification, "prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Id.* (internal quotation omitted). Bias "does not refer to any views that a judge may have regarding the subject matter at issue," particularly when they are "based upon actual observance of witnesses and evidence given during the trial," unless such opinions are "so pervasive that it is sufficient to deny the litigant a fair trial." *Id.*

4

In this case, the Petitioner argues that the post-conviction judge's comments during the September 2025 hearing and in the order denying recusal regarding his personal appreciation for Ms. McCollum's adoption of K.T. reflect his bias in favor of the State and his prejudgment of the conflict-of-interests issue. "[B]ias or prejudice warranting recusal may be shown where the trial judge expresses an opinion on the merits of a case prior to hearing any evidence, makes comments suggesting the judge has taken a position favorable or unfavorable to a party, or makes remarks indicating that the judge has prejudged factual issues." *Davis*, 38 S.W.3d at 565 (citing *Alley*, 882 S.W.2d at 822). However, "[r]emarks indicating a judge's personal moral conviction or which 'reflect prevailing societal attitudes' are insufficient alone to mandate disqualification." *Alley*, 882 S.W.2d at 822 (citations omitted). Similarly, comments that reflect sensitivity or sympathy on the part of the judge are insufficient unless they are pervasive and accompanied by prejudicial conduct. *Cf. State v. Reid*, 213 S.W.3d 792, 816 (Tenn. 2006). "Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case." *Alley*, 882 S.W.2d at 822.

Upon our de novo review, we do not find that a person of ordinary prudence would have a reasonable basis for questioning the post-conviction judge's impartiality in this case. Although the judge may have had a brief, extrajudicial conversation about Ms. McCollum's adoption of K.T., that same information, along with additional details about their relationship, was presented by the Petitioner nearly three years earlier during the hearing on his motion to disqualify the attorneys *pro tempore*. Thus, any opinion the judge may have would be based primarily upon his actual observance of witnesses and evidence presented in this case. Even under the heightened due process protections applied in capital cases, a judge's participation in earlier related legal proceedings and prior knowledge of facts related to the case are not sufficient to require disqualification. *See Harris v. State*, 947 S.W.2d 156, 172-73 (Tenn. Crim. App. 1996).

While the judge's comments may reflect a favorable opinion toward Ms. McCollum's actions with regard to their personal impact on K.T., the Petitioner has not pointed to any other facts and circumstances that would indicate that the judge has prejudged the merits of the legal issue – namely, whether this relationship created a conflict of interests or violated the Petitioner's due process rights. In other words, while the judge may believe that the adoption was a "blessing" for K.T., it does not mean that he has prejudged the issue of whether it was problematic for the Shelby County District Attorney's Office. We also note that by filing motions seeking disqualification of the various District Attorney's Offices because of this relationship, the Petitioner was asking the post-conviction judge to make a finding on the conflict-of-interests issue prior to the full post-conviction evidentiary hearing. *Cf. United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (holding that recusal was not required when "[a]ny adverse attitudes that [the judge] evinced toward the defendants were based on his study of the depositions and briefs which

the parties had requested him to make [prior to trial]").  Even if the judge had made a ruling on the Petitioner's disqualification motions, "[a] judge is in no way disqualified because he tried and made certain findings in previous litigation."  *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995) (citing *King v. State,* 216 Tenn. 215, 391 S.W.2d 637, 642 (1965)).

The Petitioner asserts that the post-conviction judge's bias against the Petitioner is demonstrated by the fact that he incorrectly characterized K.T. as "a child" who "had no one" – when in fact she was 18 when she began living with Ms. McCollum and had several living family members, many of whom participated in the Petitioner's original trial.   He also points to the judge's reference to an unrelated case and "erroneous[]" summary of the facts presented at trial "in ways that bolster the State's case and demonize Mr. Hawkins" as further indicators of the judge's bias.   We disagree that these constitute facts and circumstances that would indicate to a reasonable person that the judge's opinion on the adoption of K.T. is so pervasive as to deny the Petitioner a fair post-conviction hearing.  To the extent that the judge's comments suggest that he has "implicitly determined that Mr. Hawkins inflicted that trauma" on K.T. as the Petitioner suggests, we note that as a matter of law, the jury's verdict of guilt "ha[d] the effect of crediting the testimony of the witnesses for the State, resolving all conflicts in favor of the State, and replacing the presumption of innocence the defendant had at trial with a presumption of guilt."  *Clardy v. State*, 691 S.W.3d 390, 406 (Tenn. 2024).   To the extent that the judge's statement or order included details that were incorrect, simple "misstatements of fact are insufficient to support a showing of bias."  *Rimmer*, 250 S.W.3d at 39 (app'x).   We conclude that a person of ordinary prudence would not find a reasonable basis for questioning the post-conviction judge's impartiality based upon his comments in this case.

For the foregoing reasons, the post-conviction court's denial of the Petitioner's motion for recusal is hereby AFFIRMED.   Because it appears that the Petitioner is indigent, costs associated with this appeal shall be taxed to the State.

s/ Robert W. Wedemeyer, Presiding Judge
s/ Camille R. McMullen, Judge
s/ Matthew J. Wilson, Judge