IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2007 Session

**ROBERT EARL JOHNSON v. STATE OF TENNESSEE**
**Appeal from the Criminal Court for Davidson County**
**No. 98-A-87    J. Randall Wyatt, Jr., Judge**

**No. M2006-01651-CCA-R3-PC - Filed July 18, 2007**

In January 1998, a Davidson County grand jury indicted the petitioner, Robert Earl Johnson, on one count of first degree premeditated murder.  In November 1998, following a jury trial in Davidson County Criminal Court, the petitioner was convicted on the sole count of the indictment and sentenced to life imprisonment without the possibility of parole.  This court affirmed the conviction on appeal.  See State v. Robert Earl Johnson, No. M2000-01647-CCA-R3-CD, 2001 WL 1180524 (Tenn. Crim. App. Oct. 8, 2001).  In December 2002, the petitioner filed a pro se petition for post-conviction relief.  Counsel was appointed in January 2003, and following another change in counsel, an amended petition was filed in December 2005.  In July 2006, following an evidentiary hearing, the trial court denied the petition.  The petitioner appeals, alleging that he received ineffective assistance of counsel and that his due process right to a fair trial was violated.  After reviewing the record, we conclude that the trial court properly denied the petition and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Paul Bruno, Nashville, Tennessee, for the appellant, Robert Earl Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Dan Hamm and Lisa Naylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

The record indicates[1] that shortly after 9:00 p.m. on October 24, 1997, several neighbors of William Edwin Binkley reported hearing a loud argument and the sounds of a struggle inside his apartment. Neighbors indicated that someone was being physically thrown about the apartment, and that someone was shouting such things as "Where's my money?" and "I'm going to shoot you." One of the neighbors reported the victim crying out, "Oh God, help me. They're killing me. Oh God, help me." 911 records indicate that at least three residents from nearby apartments called 911 to report the struggle. Vickie Miller, one of the victim's neighbors, testified she called 911, but frustrated by what she perceived to be a slow police response, she called the victim's mother, Frances Hampton, and told her to come home immediately. Hampton rushed to the scene and knocked on the door. Two men exited the apartment and walked past her. One of the men was tall and thin, the other short and stocky. Hampton did not recognize the thin man, but she later identified the stocky man as the petitioner, Robert Earl Johnson. Upon entering her son's apartment, Hampton found her son with his neck cut. The victim was transported to Vanderbilt University Hospital, where he died three days later. The cause of death was determined to be forty-one stab wounds to the head, neck, torso, and extremities. The doctor who testified at trial regarding the cause of death opined that more than one weapon was probably used to kill the victim.

Another neighbor, Derrick Barrett, testified that while standing by a car containing an abandoned infant, he saw two men—one thin, one husky—walking hurriedly toward the car, acting suspiciously. The two men then entered the car and drove away. Barrett gave the tag number to police. The vehicle was registered to Roderick Johnson, the petitioner's brother and co-defendant at trial, who testified at trial that he was caring for his fiance's fifteen-month-old daughter that night and often traveled with a baby's car seat in his vehicle.

A third neighbor, Brandy Stoops, testified that the night of the murder, she saw two men—one thin, one husky—pushing through a crowd of people outside the victim's apartment. Stoops testified that she could clearly see the husky man's face. Stoops later identified the petitioner's photograph in an array, stating that he was the husky man she had seen that night.

The police were unable to recover any fingerprints from the scene, but they did recover the victim's blood from Roderick Johnson's car. Additionally, a week later, while cleaning out the victim's apartment, Hampton, the victim's mother, discovered a screwdriver jammed under a coffee table. The screwdriver was tested for blood, and the tests revealed that the tool contained the victim's blood. According to Jeff West, the lead detective in the case, both Stoops and the victim's mother identified the petitioner from photographic arrays but did not identify his brother. None of the other witnesses was able to identify either Johnson brother in the arrays.

---

[1] This summary of the facts of the case and of trial court testimony is taken largely from the opinion delivered by this court in the petitioner's direct appeal. See Robert Earl Johnson, 2001 WL 1180524, at *1-*6. According to the record, the petitioner and his brother, Roderick Johnson, were co-defendants at trial. Id. at *1.

At trial, the petitioner testified in his own defense, stating that he had a rather tumultuous relationship with the victim. Many of their squabbles concerned illicit drugs and money. The petitioner said he had gotten into an argument with the victim the day before the victim died, but he was with his wife the night the victim died. The petitioner testified that he had wanted the police to investigate whether his sister's paramour, Baso Felder, was the man who was with Roderick Johnson at the victim's apartment. The petitioner testified that he and Felder were similar in appearance and were often seen with Roderick Johnson. However, when the victim's mother was shown a photograph of Felder at trial, she denied seeing Felder the night of her son's murder.

At the post-conviction hearing, Roderick Johnson testified that at trial, he had presented an alibi defense for himself, particularly, that he was at his sister's house at the time of the killing. Johnson stated that this alibi defense was not truthful testimony. His "revised" version of events was that one evening, he, his daughter,[2] and Felder (but not the petitioner) drove to the victim's apartment. Felder went into the apartment; after a while, Johnson left his daughter in the car and went into the apartment to discover the victim lying on the floor and Felder standing over him. When Johnson asked Felder what was going on, Felder told Johnson to be quiet, then knelt on the floor and stabbed the victim repeatedly with a knife, which Johnson later deposited in a dumpster behind the victim's apartment. Ultimately, someone began knocking on the apartment's front door, and both men left the apartment. Johnson testified that he was in the apartment with Felder and the victim approximately twenty to twenty-five minutes before he and Felder left. Johnson testified that this was the first time he had recounted this revised version of events; he claimed that his attorneys at trial and on post-conviction had told him not to address the issue regarding his trial testimony.

The petitioner's three trial attorneys all testified at the hearing. One of the attorneys testified that no motion to suppress the photograph arrays was filed, but the attorneys did challenge the ability of the witnesses to identify the petitioner in the dark on cross-examination. Counsel had no recollection if the police investigated Felder, but that the defense attorneys "always had thought that [Felder] was the person who had committed the murder with Roderick or with whomever." Counsel recalled that one of her main concerns was "that two people had picked [the petitioner] out of a lineup and two people were coming to Court and were going to identify him as having been there." The other two attorneys reiterated counsel's testimony, with one of the attorneys stating that based on her examination of the photograph arrays at the post-conviction hearing, "there [does] not appear to be any legal basis for filing a lineup motion. I wouldn't file one just to file it."

Detective West testified that Roderick Johnson became a suspect based largely on the identification of his vehicle in the apartment's parking lot the night of the killing. Detective West stated that Johnson had told police that he was not present at the victim's apartment the night of the murder, but that he did not believe Johnson's alibi. He also said that he did not place Felder's photograph in the arrays and did not interview Felder. Detective West said he pursued the Johnson

---

[2]A review of Roderick Johnson's direct appeal indicates that this child was actually his fourteen-month-old stepdaughter. See State v. Roderick Johnson, No. M1999-00605-CCA-R3-CD, 2000 WL 1717542, at *2 (Tenn. Crim. App. Nov. 17, 2000).

brothers as suspects rather than Felder based on physical descriptions of the suspects and the presence of Roderick Johnson's car at the crime scene.

The petitioner testified that in addition to his attorneys' failure to file a motion to suppress the photograph arrays, his ineffective assistance of counsel claims were based on the fact that his attorneys did not call him to testify about his work history, his lack of a criminal history, and his relationship with his children. He said that appellate counsel failed to challenge the use of a "substitute" medical examiner and failed to challenge the absence of Felder's photograph from the array. On cross-examination, the petitioner admitted that his parents did testify about the positive aspects of his character.

Felder, who testified for the state, denied involvement in the victim's murder. He said that nobody had ever confused him with the petitioner. He said he did not know the victim, despite the fact that he spent plenty of time with both Johnson brothers and knew many of their friends. Felder admitted that prior to the killing, he had an extensive criminal record. He had pled no contest to attempted murder after being accused of shooting someone, and he had also accumulated a drug conviction, domestic violence convictions, and an aggravated assault conviction, for which Felder was on community corrections at the time of the killing. Felder was a mechanic by trade, and owned several screwdrivers.

The victim's mother reiterated that the petitioner was the one she had seen running from her son's apartment the night of the murder. She also denied seeing Felder the night of the murder.

## STANDARD OF REVIEW: POST-CONVICTION PROCEEDINGS

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, the petitioner's claims are reviewed under a de novo standard with no presumption of correctness. Id. at 457.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received ineffective assistance of counsel. He claims he is entitled to relief because his attorneys at trial failed to create reasonable doubt by presenting sufficient evidence to show that Baso Felder was the actual perpetrator in the case. The petitioner also bases his claim on his trial attorneys' supposed failure to elicit testimony that the victim never identified the petitioner as the perpetrator of the crime and his appellate attorney's failure to raise both issues on appeal.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right of counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The petitioner must satisfy both prongs of the Strickland test to prevail on a claim of ineffective assistance of counsel. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires the petitioner to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criterial set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201.

*Failure to Present Evidence that Baso Felder was the Perpetrator*

The main contention in the petitioner's ineffective assistance of counsel claim is that his attorneys failed to present evidence that Felder was the actual perpetrator in this case. As the petitioner argues in his brief,

trial counsel *may have been able* to elicit information regarding Mr. Felder that would have been helpful to [the appellant's] position. For instance, trial counsel *should have shown* that Ba[s]o Felder knew both [appellant] and [his brother], and that . . . [Felder] is a mechanic by trade; that as a mechanic, Mr. Felder owns several tools including wrenches and screwdrivers, that the murder weapon in this case was a screwdriver; that the police never interviewed or even contacted Ba[s]o Felder when investigating this case; and that the police never prepared or presented a photographic lineup in this case that included a photograph of Ba[s]o Felder. . . . Trial counsel *could have* also presented to the jury information regarding Mr. Felder's past, including an admission from Mr. Felder that his record shows him to be a very violent person . . . .

(Emphasis added.)

The petitioner's argument, comprised of a series of conclusory musings about what might have been, does not begin to approach the "clear and convincing" standard required by statute. The petitioner fails to show that the failure of trial counsel to pursue Baso Felder as a suspect fell beneath the standard of care expected of defense counsel or that this alleged failure prejudiced the petitioner in any way. As such, the petitioner is not entitled to relief on this issue.

*Failure to Elicit Testimony that Victim did not Identify Petitioner as Perpetrator*

The petitioner claims that his trial attorneys failed to elicit testimony that the victim did not identify the petitioner as the one who committed the crime. This court's opinion in the petitioner's direct appeal indicates that the victim's mother testified that shortly after arriving at her son's apartment the night of the incident, she saw him lying on the floor and bleeding profusely. Robert Earl Johnson, 2001 WL 1180524, at *2. At that point, the victim said, "Momma, I didn't owe them any money. I didn't owe them any money." Id. The victim's statement did not indicate the identities of "them;" therefore, this testimony elicited the very information that the petitioner sought to introduce. Furthermore, the petitioner has failed to identify any other witness whose testimony would have yielded this information. As such, we conclude that the petitioner is not entitled to relief on this issue.

DUE PROCESS VIOLATIONS

The petitioner claims that his due process right to a fair trial was violated based upon (1) the perjured trial testimony of his brother, Roderick Johnson, (2) improper statements made by the prosecutor during his closing argument at trial, and (3) law enforcement's failure to include Baso Felder's photograph in the array shown to witnesses. We initially note that the petitioner raised issues (2) and (3) in his direct appeal, and this court denied the petitioner relief on these issues. See Robert Earl Johnson, 2001 WL 1180524 at *14, *16-*17. Thus, in this post-conviction appeal, we

may not consider these previously determined issues. See Tenn. Code Ann. § 40-30-106(h) (2006). Therefore, we will only address Roderick Johnson's testimony at the post-conviction hearing, in which he stated that his trial testimony was perjured and that the petitioner was not involved in the offense.

The petitioner did not raise the issue of the allegedly perjured testimony of Roderick Johnson on his direct appeal. Therefore, this issue is waived for purposes of a post-conviction appeal. See Tenn. Crim. App. § 40-30-106(g)(1)-(2); State v. Benson, 973 S.W.2d 202, 208 (Tenn. 1998). In the alternative, the petitioner claims that the perjured testimony issue should be claimed because the testimony is newly discovered evidence. However, subsequently or newly discovered evidence in criminal cases is addressed by a writ of coram nobis. See Tenn. Code Ann. § 40-26-105. The record does not indicate that such a writ has been filed. Regardless of the theory under which the petitioner seeks relief, and discounting any waiver issues, the petitioner has not shown that his brother's revised testimony would or even could have led the jury to find differently. As the trial court stated,

> Roderick Johnson's testimony is in direct opposition to the unequivocal testimonies of Ms. Hampton and Ms. Stoops, both of whom identified Petitioner at the crime scene. In fact, . . . the Petitioner was the only individual identified at the scene, and such identifications were confirmed by the witnesses numerous times since the death of the victim. . . . Roderick Johnson's contention that the witnesses mistakenly identified the Petitioner rather than Mr. Felder is tenuous, considering their obvious [differences] in appearance. . . . [T]he police department had ample opportunity to evaluate whether they believed Mr. Felder perpetrated the crime, and despite the Petitioner['s] and Roderick Johnson's contention[s], Detective West and his colleagues determined he was not involved. The Court finds that sufficient evidence does not exist to conclude that [Roderick] Johnson's latest testimony is truthful and that the Petitioner's fair trial rights were violated.

We agree with the trial court and conclude that the petitioner's issue is without merit.

## CONCLUSION

In consideration of the foregoing and the record as a whole, we conclude that the trial court properly denied the petition for post-conviction relief. Therefore, the judgment of the trial court is affirmed.

_____
_____D. KELLY THOMAS, JR., JUDGE

-7-