IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2013

**JOANN G. ROSA v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 100898     Mary Beth Leibowitz, Judge**

**No. E2013-00356-CCA-R3-ECN-FILED-OCTOBER 21, 2013**

The Petitioner, Joann G. Rosa, appeals the Knox County Criminal Court's denial of her petition for a writ of error coram nobis regarding her conviction for first degree murder, for which she is serving a life sentence. The Petitioner contends that the trial judge who presided over her jury trial pleaded guilty to official misconduct, that the judge's misconduct was newly discovered evidence entitling her to a new trial, that the judge's misconduct created structural error entitling her to a new trial, and that the trial judge who denied coram nobis relief had a conflict of interest because she was mentioned in the Tennessee Bureau of Investigation (TBI) report regarding the misconduct allegation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Joann G. Rosa, Nashville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the 1995 killing of James Dalton. This court summarized the facts of the case in the appeal of the Petitioner's conviction:

> On March 25, 1995, the defendant; her codefendant, Dennis Halcomb;
> the murder victim, James Dalton; and two friends, Teresa Dake and Larry

Davis, rented two adjoining motel rooms in Athens, Tennessee, and spent the evening "partying." The next day, the group decided to spend another evening at the motel. That evening, while Dalton and Davis remained at the motel, the defendant, co-defendant Halcomb, and Dake robbed the gas station where Dake worked.

Early the next morning, on March 27, 1995, the group left Athens and drove to Knoxville, stopping at another motel, where they again rented adjoining rooms. The defendant, co-defendant Halcomb, and Dake expressed concern that Dalton would report the robbery to authorities. The defendant said they were going to have to "do something" to keep him from "saying anything." Later, while Davis and Dake slept in one of the motel rooms and Dalton slept in the other, the defendant and co-defendant Halcomb discussed what to do about Dalton. They planned to take Dalton's wallet and car, and Halcomb said he was going to knock Dalton out. The defendant took Dalton's keys and wallet and put them in the room where Dake and Davis were sleeping.

When the defendant returned, Dalton confronted co-defendant Halcomb about his missing keys and wallet. Halcomb, who was approximately 6'3" and weighed over 200 pounds, began hitting Dalton, who was approximately 5'4" and 145 pounds. Halcomb held Dalton's neck in a chokehold and asked the defendant to help him. While Dalton was on his knees leaning over the bed, the defendant grabbed the front of Dalton's throat and choked him, even while Dalton gasped for air and begged her to stop. Halcomb removed Dalton's belt from his pants, placed it around Dalton's neck, and told the defendant to hold the belt. While Halcomb went to the restroom, the defendant choked Dalton with the belt until his face turned blue. When Halcomb returned, the defendant checked Dalton for a pulse, but did not find one.

They drove Dalton's body to an area of town with which the defendant was familiar. After the defendant sliced Dalton's throat with a box cutter to ensure he was dead, they dumped his body on the side of the road, covering it with leaves. They returned to the motel, picked up Dake, and traveled in Dalton's car to Illinois to visit the defendant's family and then to Daytona Beach, Florida.

Meanwhile, Dalton was reported missing. On April 3, 1995, Sherry Wade, a friend of Dake and the defendant, received a call from the defendant. Knowing Dalton was missing and thinking he might be with them, Wade asked

the defendant where Dalton was. At first, the defendant replied she did not know, but then she told Wade "he was gone; he's gone; he's under a tree." A couple of days later, Wade reported this conversation to the McMinn County Sheriff's Department.

On April 6, 1995, the defendant, her codefendant, and Dake were apprehended in a traffic stop while driving Dalton's vehicle in Florida. During an interview by the Florida authorities, the defendant initially denied knowing anything about Dalton's disappearance, but she later drew a map showing where his body was buried. Using the map, Tennessee authorities found the body[.]

*State v. Rosa*, 966 S.W.2d 833, 836 (Tenn. Crim. App. 1999). The Petitioner sought post-conviction relief on the ground that she received the ineffective assistance of counsel. The trial court denied relief, and this court affirmed. *See Joann Gail Rosa v. State*, No. E2002-00437-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App. Mar. 17, 2003), *perm. app. denied* (Tenn. Sept. 2, 2003).

On December 28, 2012, the Petitioner filed her petition for a writ of error coram nobis on the ground that the trial judge who presided over her jury trial was convicted of official misconduct on March 10, 2011. She argued that the TBI report and an interview of the judge by a reporter showed the judge was intoxicated while presiding over criminal cases dating from 1996 and that this was newly discovered evidence entitling her to a new trial. She further argued that the judge's ability to act as the thirteenth juror was impaired by his addiction and that had she known of the addiction, she would have requested the judge recuse himself from the trial. She argued the judge's intoxication prevented her from being convicted of lesser included homicide offenses.

The trial court summarily denied relief. It found that the Petitioner presented no evidence showing the "inappropriate behavior" for which the trial judge pleaded guilty. It found that the Petitioner failed to make specific allegations showing inappropriate conduct by the judge during her trial and that the alleged conduct "would have changed the outcome of her trial in 1996." The court also found that the statute of limitations for filing a petition for a writ of error coram nobis had expired. This appeal followed.

The Petitioner contends that the trial court erred by denying her coram nobis relief. She argues that the TBI investigation into the trial judge who presided over her trial constitutes newly discovered evidence because the report showed the judge engaged in official misconduct, namely prescription drug abuse and illegal activities surrounding his addiction. She argues the judge's misconduct created structural error, entitling her to a new

-3-

trial. The State responds that the court properly denied coram nobis relief because the petition was untimely and that the Petitioner has failed to state a cognizable claim. We agree with the State.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105 (2012); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The decision to grant or deny such a writ rests within the sound discretion of the trial court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). A petition for a writ of error coram nobis must be filed within one year of the date the judgment becomes final in the trial court. T.C.A. § 27-7-103 (2000); *State v. Mixon*, 983 S.W.2d 661, 663 (Tenn. 1999); *State v. Ratliff*, 71 S.W.3d 291, 295 (Tenn. Crim. App. 2001). The only exception to the statute of limitations is when due process principles require tolling. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001).

Due process may require tolling of the limitations period if a petitioner seeks relief based upon newly discovered evidence of actual innocence. *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010); *Workman*, 41 S.W.3d at 101. "'Before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" *Workman*, 41 S.W.3d at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 2002)). Nevertheless, a petitioner seeking relief under the statute must exercise due diligence in presenting claims that fall outside the statute of limitations. *Harris*, 301 S.W.3d at 144; *Mixon*, 983 S.W.2d at 670.

Although the Petitioner failed to attach a copy of the judgment of conviction to her petition for relief, the trial court's written order denying coram nobis relief states that the Petitioner was sentenced on September 5, 1996. The Petitioner's conviction became final on June 14, 1999, when the supreme court denied her application for permission to appeal. *See Rosa*, 966 S.W.2d at 833. The petition was untimely. The State argues that the Petitioner is not entitled to tolling the statute of limitations because she has failed to state a cognizable claim for coram nobis relief.

Our supreme court has said that determining whether due process requires tolling requires a three-step analysis in which the court must

(1) determine when the limitations period would normally have begun to run;
(2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are

-4-

"later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim. In making this final determination, courts should carefully weigh the petitioner's liberty interest in "collaterally attacking constitutional violations occurring during the conviction process," *Burford*, 845 S.W.2d at 207, against the State's interest in preventing the litigation of "stale and fraudulent claims." *Id.* at 208.

*State v. Sands*, 903 S.W.2d 297, 301 (Tenn. 2005).

The Petitioner argues that the TBI report and an interview of the judge by a reporter showed that the judge was intoxicated while presiding over criminal cases dating from 1996 and that this is newly discovered evidence entitling her to a new trial. The Petitioner's argument is misplaced. "When a trial court addresses a petition for [a] writ of error coram nobis, it must find that the subsequently or newly discovered evidence 'may have resulted in a different judgment, had it been presented at the trial.'" *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012) (quoting T.C.A. § 40-26-105(b)). As a result, not only must the newly discovered evidence supporting a petition for a writ of error coram nobis suggest actual innocence, it must also be admissible. *Id.* at 237 (internal citations omitted) (concluding that an assistant district attorney's handwritten note expressing views about the credibility of two of the State's witnesses was inadmissible evidence and was insufficient to support a petition for a writ of error coram nobis).

In *Gary S. Mayes v. State*, No. E2012-00680-CCA-R3-PC, slip op. at 4 (Tenn. Crim. App. Feb. 7, 2013), the petitioner sought coram nobis relief on a similar ground as the Petitioner in the present case. There, the petitioner contended that "newly discovered evidence related to 'questions concerning the judgment and morality of the [post-conviction judge]' warranted coram nobis relief." *Id.*, slip op. at 2. This court concluded that the general allegation did not "cast doubt" on the petitioner's guilt and could not form the basis of a petition for coram nobis relief. *Id.*, slip op. at 4.

We conclude that the Petitioner has failed to state a cognizable claim for coram nobis relief because she has not presented evidence of actual innocence. Evidence of intoxication and illegal activities surrounding the judge's drug abuse would not have been admissible at her trial because it was not relevant and probative of whether she committed the crime of which she was convicted. *See* Tenn. R. Evid. 401 (defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Likewise, the judge's intoxication during her trial does not relate to matters litigated at the trial. *See* T.C.A. § 40-26-105. Tolling of the statute of limitations is unnecessary because she has failed to

state a cognizable claim for relief. The Petitioner is not entitled to relief on this basis.

The Petitioner argues the trial judge's intoxication created structural error. "Structural constitutional errors are errors that compromise the integrity of the judicial process itself." *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008) (citing State v. Garrison, 40 S.W.3d 426, 433 n.9 (Tenn. 2000)). Structural errors "*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9 (1999). As a result, structural errors are subject to automatic reversal because they deprive a defendant of a right to a fair trial. *Rodriguez*, 254 S.W.3d at 361.

Our supreme court recently considered whether the behavior of the trial judge who presided over the Petitioner's trial rose to the level of structural error absent any evidence that the judge's misconduct affected the integrity of the trial. *See State v. Letalvis Cobbins, LeMaricus Davidson, and Geroge Thomas*, No. E2012-00448-SC-R10-DD (Tenn. May 24, 2012). The defendants in *Letalvis Cobbins*, *et al.* argued that the trial judge's misconduct outside the courtroom constituted structural error, entitling them to new trials. Our supreme court, though, disagreed. Similar to the Petitioner, the defendants failed to show any conduct on the part of the judge affecting the integrity of their trials. The court concluded that a trial judge's misconduct alone does not constitute structural error. *Id.*, slip op. at 4. The court also concluded that a defendant must show that the "misconduct affected the trial proceedings." *Id.* (citing *State v. Benson*, 973 S.W.2d 202, 206 (Tenn. 1998) (concluding that a petitioner must show that the trial judge, who engaged in acts of corruption at the time of the trial, actually solicited a bribe from the petitioner)); *see State v. Raynella Dossett Leath*, No. E2011-00437-CCA-R3-CD, slip op. at 43 (Tenn. Crim. App. June 3, 2013) (concluding "a trial judge's misconduct outside the courtroom does not constitute structural error when there is no showing . . . in the record that the trial judge's misconduct affected the outcome of the proceedings") (internal quotation omitted), *perm. app. filed* (Tenn. Aug. 1, 2013). The Petitioner failed to allege in her petition specific instances of conduct by the trial judge affecting the integrity of her trial. Therefore, she cannot establish structural error. The Petitioner is not entitled to relief on this basis.

The Petitioner also argues that the trial judge who denied coram nobis relief had a conflict of interest because she was mentioned in the TBI report. The State contends the issue is waived because the Petitioner failed to include the report in the appellate record. We agree that the Petitioner is not entitled to relief.

The petition does not describe the nature of the alleged conflict of interest. The Petitioner's failure to describe the alleged conflict of interest and any mention of the trial judge in the report, alone, do not justify recusal. *See Alley v. State*, 882 S.W.2d 810, 820

(Tenn. Crim. App. 1994) (concluding that recusal is "warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge would find a reasonable basis for questioning the judge's impartiality").  The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE